**JACKSON'S INDUSTRIAL SUPPLIES, INC., Appellant,**

v.

**B.F. COCHRAN, Jr., Appellee.**

**No. 09–90–114 CV.**

Court of Appeals of Texas, Beaumont.

May 16, 1991.

Appellee's Rehearing Denied May 29, 1991.

Appellant's Rehearing Denied June 5, 1991.

Tom Brown, Livingston, for appellant.

John H. Seale, Seale, Stover, Coffield, Gatlin & Bisbey, Jasper, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

Appellant, Jackson's Industrial Supplies, Inc., appeals from a judgment rendered in favor of appellee, B.F. Cochran, Jr.

Appellee filed suit seeking recovery of salary and commissions allegedly due him from appellant, his former employer. Appellee also sought and obtained recovery of damages for slander based upon statements made by appellant's president to appellee's present partner.

The trial court, after a non jury trial, found appellee should recover $16,159.28 for unpaid commissions and salary, $6,000.00 for attorney's fees and $25,000.00 as damages for slander.

Appellant has timely perfected this appeal bringing to this Court six points of error which shall be addressed in the order submitted.

■ Point of error one contends trial court error in finding that appellant owes appellee $16,159.28 because the evidence is legally and factually insufficient to support such finding.

Appellant's legally insufficient claim is actually a contention that the trial court should have held as a matter of law that appellee was not entitled to recovery. To sustain such position this Court must find any of the following: (a) a complete absence of evidence of a vital fact; (b) that the trial court was barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a scintilla; and (d) the evidence establishes conclusively the opposite of the vital fact. *See, Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,* 61 TEXAS L.REV. 361 (1960).

Viewing the record we find that appellant and appellee had entered a written agreement dated January 21, 1987, titled "Sales Compensation Arrangement." This arrangement set out certain details concerning appellee's salary and commission, however, the lawsuit was not tried on written contractual theories, but was consensually tried simply as an account basis. Even though throughout the trial and in appellant's brief much is made concerning the written arrangement, it is apparent to us that the trial court simply used said written arrangement as a guideline to determine salary and commissions owed.

The trial court admitted evidence concerning salary and commissions which was without question a basis for its finding that "Defendant owes Plaintiff $16,159.28 for unpaid commissions and salaries." Appellant's no evidence point cannot stand and is overruled.

Appellant insufficiency point must also fail for we must view the evidence in its most favorable light in support of the trial court's findings. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The trial court considered evidence through the oral testimony of B.F. Cochran, appellee, along with numerous exhibits, which taken together, factually support the trial court's finding and judgment of $16,159.28. To sustain appellant's insufficiency point would compel us to find either that the evidence is factually insufficient to support

the finding or that the finding itself is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. This we cannot do. Therefore, appellant's point of error number one is overruled.

■ Points of error two, three, four and five relate to the trial court's findings, conclusions and judgment that statements made by appellant's president were slanderous and compensable. Again, appellant attacks the trial court's findings as legally and factually insufficient. Appellant also contends that statements by appellant's president are privileged.

Appellant's president, Stonewall Jackson, made a telephone call to Bill Cantrell somewhere around the middle of September 1989. Bill Cantrell testified at trial to the following in response to questions propounded by appellee's counsel:

Q. I'll ask you whether or not you received a phone call from Mr. Stonewall Jackson in which statements were made to you by Mr. Jackson concerning Muggins Cochran?

A. Yes. Mr. Jackson called me sometime around the middle of September.

Q. Of 1989?

A. 1989.

Q. And I'll ask you whether or not in his—in that telephone conversation whether or not he told you that Muggins Cochran was a thief and that he had stolen from him?

A. He did tell me that, yes sir.

Q. I'll ask you whether or not he said anything to you about whether he should work for you or whether you should have anything to do with Muggins?

A. The conversation was that Mr. Jackson wanted to warn me about some things that happened in the past and that some of the things Muggins had done, which had to do with him stealing from the company, and wanted to make me aware of that. That he thought I should know that.

Q. And was there some particular statement made to you by Mr. Jackson as to whether or not he wanted—whether or not he was concerned about Muggins

working for you and being a competitor of his?

A. Mr. Jackson stated that Muggins was the best mill supply salesman, they didn't want him as a competitor.

Q. Tell us whether or not he urged you not to employ him and not to do any business with him?

A. He told me the story and sent me some paperwork that had to do with something happened in the past and called me back, oh, roughly two weeks later and wanted to know what I had decided whether or not we would go into business together.

Q. All right. And what decision did you make as to whether or not to go ahead and go into business with Muggins in spite of what Mr. Jackson had said to you?

A. Well, I just in my opinion I had been knowing Muggins a long time and what we had talked about earlier before the conversation, we just proceeded on and opened up our company over here.

Q. Now did Mr. Jackson specifically make any statement to you relevant to Muggins stealing from him with reference to a method and particularly did he say anything about a computer?

A. I asked him and he tried to explain to me how it happened. I didn't quite understand it. And I believe what he said was that he figured out a way to outsmart the computer.

Q. But was there any question at all about the fact that he was telling you over the telephone that Muggins Cochran was a thief?

A. That's what he said, yes.

Q. Was there any question in your mind but what the purpose of his saying that and the purpose of his calling to you was to try to keep Muggins from getting work with you?

A. I think that's why.

The trial court found as a fact that "In September, 1989, Defendant's president published statements to Bill Cantrell that Plaintiff was a thief and that Cantrell

should not get involved with Plaintiff, as Plaintiff would steal from Cantrell also."

We now look with interest to Plaintiff's Exhibit No. 1 which was before the trial court. Pertinent parts of that exhibit titled "Agreement" read as follows:

### Agreement

This Agreement is made and entered into on this the 3rd day of November, 1982, by and between BOLIVAR F. COCHRAN ("Cochran") and JACKSON'S INDUSTRIAL SUPPLIES, INC. ("Company"), and is as follows:

### I.

The parties hereby mutually stipulate, agree and represent to each other that the following facts and statements are true, correct and accurate:

(a) Cochran has been and at this time is an employee of Company in the capacity of salesman.

(b) During the course of his employment, Cochran has intentionally misappropriated, converted to his own use and benefit, stolen and embezzled money, funds, cash and checks payable to Company by Company's customers, by placing such money, funds, cash and checks (by the forging of endorsements of the Company) in one or more bank accounts of Cochran's, without the authorization or effective consent of the Company, and with the intent to deprive the Company of such funds; such funds so misappropriated are estimated to be at least $5,133.38.

(c) At this date, Cochran is the owner of seventy-five (75) shares of the capital stock of Company, which shares are subject to the terms and provisions of a certain Agreement for Purchase and Sale of Stock, dated Feb. 27th, 1976, between Cochran and Company; the value of such shares of stock (at a book value of $130.70 per share) is $9,802.50 for all purposes under this Agreement.

### II.

In realization of the foregoing facts, and for and in consideration of the covenants hereafter made by Company, Cochran hereby agrees, represents, promises and covenants with Company as follows:

(a) Cochran hereby terminates his employment with Company.

(b) Within 7 days from date hereof, Cochran will furnish or take any action requested by Company or give any consents necessary to cause to be furnished to Company, sufficient bank records or other records requested by Company to enable Company to determine to its satisfaction the exact amount of the funds misappropriated by Cochran, as stated in paragraph I.(b) hereof.

. . . .

(d) To the extent that the amount of funds misappropriated by Cochran from Company (as finally determined under paragraph II.(b) hereof) exceeds the value of the stock so transferred, Cochran agrees to repay such excess to Company within a period of 90 Days from date hereof. To the extent the value of the stock so transferred exceeds the amount of such misappropriated funds, Cochran shall be entitled to payment of such excess value from Company under the terms of paragraph III.(b) hereof.

. . . .

(g) Cochran represents that he has read this Agreement or has had it explained to him so that he understands all provisions hereof; that he understands and accepts all provisions hereof; that he executes it of his own free will and choice, and not under any duress, nor due to any threat, promise or coercion by Company.

### III.

For and in consideration of the covenants and agreements made herein by Cochran, Company agrees as follows:

(a) Even though Cochran has committed acts against Company and its property which amount to one or more

criminal offenses under the penal laws of Texas, Company agrees, in reliance upon the covenants and representations made herein by Cochran, that it will file no complaints with law enforcement authorities nor take any action calculated to result in any criminal prosecution of Cochran, so long as Cochran abides by the agreements and covenants made herein by him.

(b) If the value of the capital stock this date transferred by Cochran to Company exceeds the value of the funds misappropriated by Cochran as set forth in paragraph I.(b) and as finally determined under paragraph II.(b) hereof, then the net difference in such value shall be paid by Company to Cochran on or before twelve (12) months from the date such net difference is finally determined, with no interest thereon.

EXECUTED in multiple originals on the day and year first above written.

Jackson's Industrial Supplies, Inc.

By:/s/ Moody Stone Jackson, III
Moody Stone Jackson, III
President

/s/ Bolivar F. Cochran
Bolivar F. Cochran

This agreement was signed by Bolivar F. Cochran and Moody Stone Jackson, III, President.

It is clear that Stonewall Jackson, in telephone conversation with Bill Cantrell, referenced B.F. Cochran a thief. The trial court findings, conclusions and judgment now challenges that age old legal concept that "truth is a defense to allegations of slander."

B.F. Cochran is a thief by admission, by agreement and by a written contract supported by consideration. Stonewall Jackson published that fact to Bill Cantrell.

To constitute actionable slander there must be a defamatory statement orally communicated without legal excuse. *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex.Civ.App.—Tyler 1980, no writ). The burden of proving the falsity of the statements made by Stonewall Jackson rest with B.F. Cochran, not with appellant to prove the truthfulness of such statements. *See, Outlet Co. v. International Security Group, Inc.,* 693 S.W.2d 621 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

This Court is extremely hard pressed to find any evidence in the record which would support the trial court's finding that appellant's president said that Bill Cantrell should not get involved with plaintiff, as plaintiff would steal from Cantrell also. A basis for this factual finding is simply not in the record. We have recited all of the pertinent testimony from Bill Cantrell and no where does Bill Cantrell state that appellant's president told Cantrell that Cochran would steal from him.

The trial court concludes as a matter of law that appellant's president telling Bill Cantrell that B.F. Cochran was a thief, was slanderous. We find absolutely no evidence to support this conclusion. The evidence establishes conclusively the opposite of what the trial court concluded. We sustain appellant's no evidence point of error number two. In so doing we are required and do reverse and render judgment that the statement by appellant's president, Stonewall Jackson, that B.F. Cochran was a thief is a true and truthful statement.

We further find that there is no evidence in the record which can support the trial court's finding that appellant's president published a statement that B.F. Cochran would steal from Bill Cantrell. Again, no where does Bill Cantrell testify that appellant's president made such a statement. We are at a loss as to what the trial court used as a basis for its finding, conclusion and judgment on this issue. We sustain appellant's point of error number two and reverse the judgment of the trial court awarding appellee $25,000.00. Judgment is rendered in favor of appellant that appellee take nothing from appellant on any action for slander. This rendition sustains point of error number five also. We find no need in addressing appellant's points of error three and four.

Appellant's final point of error addresses the award of $6,000.00 attorney's fees to appellee for collection of the salary and commissions due appellee.

The trial court found that a reasonable attorney's fee for the collection of $16,159.28 would be the sum of $6,000.00. We must view the trial court's award of attorney's fees being within the discretion of the trial court and appellant must show where and how that discretion was abused. Appellant has failed to show such abuse, therefore, we must affirm the trial court's award of $6,000.00 attorney's fees.

The judgment of the trial court is affirmed as to the award of $16,159.28 for unpaid commissions and salary; affirmed as to the award of $6,000.00 for attorney's fees; reversed and rendered that appellee take nothing in appellee's claim for slander.

The judgment is further reversed and remanded on the calculation of pre-judgment interest in that the judgment apparently took into consideration interest on the $25,000.00 slander award.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND REVERSED AND RENDERED IN PART.